# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARTHUR F. STOSS,** | : | **CIVIL ACTION NO. 1:18-CV-1479** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT ESTOCK and** | : | |
| **PA STATE ATTORNEY GENERAL,** | : | |
| | : | |
| **Respondents** | : | |

## <u>MEMORANDUM</u>

Petitioner Arthur F. Stoss ("Stoss") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a conviction and judgment imposed in the Court of Common Pleas of Luzerne County, Pennsylvania. (Doc. 1). For the reasons discussed below, the court will deny the petition.

## I.   <u>Factual Background & Procedural History</u>

In March 2011, Stoss was charged with first-degree murder and criminal homicide. <u>Commonwealth v. Stoss</u>, No. CP-40-CR-0001540-2011 (Pa. Ct. Com. Pl. Luzerne Cnty.). At the conclusion of a five-day trial, a jury convicted Stoss of first-degree murder. <u>Id.</u> On June 12, 2012, the trial court imposed a sentence of life imprisonment without the possibility of parole. <u>Id.</u> Stoss filed a timely direct appeal to the Pennsylvania Superior Court. <u>Commonwealth v. Stoss</u>, No. 1374 MDA 2011 (Pa. Super. Ct.). On August 7, 2013, the Superior Court affirmed his judgment of sentence. <u>Commonwealth v. Stoss</u>, 2013 WL 11256473, No. 1374 MDA 2012 (Pa. Super. Ct. Aug. 7, 2013). On September 5, 2013, Stoss filed a petition for allowance of appeal with the Pennsylvania Supreme Court. <u>Commonwealth v. Stoss</u>, No. 676

MAL 2013 (Pa. 2013). On January 21, 2014, the Pennsylvania Supreme Court denied the petition for allowance of appeal. <u>Commonwealth v. Stoss</u>, 83 A.3d 415 (Pa. Jan. 21, 2014) (table decision).

On March 10, 2014, Stoss filed his first *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. § 9541 *et seq.*, collaterally attacking his conviction. <u>Commonwealth v. Stoss</u>, No. CP-40-CR-0001540-2011 (Pa. Ct. Com. Pl. Luzerne Cnty.). The PCRA court appointed counsel, and PCRA counsel filed a supplemental petition on November 13, 2014. <u>See</u> <u>Commonwealth v. Stoss</u>, 2016 WL 5930533, at *2 (Pa. Super. Ct. Sept. 8, 2016). On April 21, 2015, an evidentiary hearing was held on Stoss's PCRA petition. <u>See</u> <u>id.</u> On September 14, 2015, the PCRA court dismissed the petition. <u>See</u> <u>id.</u> PCRA counsel filed a timely appeal. <u>Commonwealth v. Stoss</u>, No. 1869 MDA 2015 (Pa. Super. Ct.). On September 8, 2016, the Superior Court affirmed the PCRA court's order denying post-conviction relief. <u>Id.</u>

On January 20, 2017, Stoss filed a second *pro se* PCRA petition. <u>Commonwealth v. Stoss</u>, No. CP-40-CR-0001540-2011 (Pa. Ct. Com. Pl. Luzerne Cnty.). On January 18, 2018, the PCRA court denied the petition. (Doc. 13-2, at 46-57, <u>Commonwealth v. Stoss</u>, No. 1540 of 2011, PCRA Court Opinion and Order).

On July 7, 2018, Stoss filed the instant federal habeas petition. (Doc. 1). By Memorandum and Order dated May 17, 2019, the court found that Stoss did not properly exhaust claims raised in his second PCRA petition and dismissed all of

them.[1]  (Docs. 15, 16).  On the other hand, the court further found that Stoss had

fully exhausted the following claims: the trial court erred in failing to suppress his

statements to the Pennsylvania State Police, failing to suppress evidence seized

without his consent, and failing to give a missing witness instruction; and, trial

counsel were ineffective for failing to present an alibi defense, failing to object to the

prosecution's closing statement, and failing to present any evidence that another

individual confessed to killing someone on the same night Stoss was accused of the

murder.  (Id.)  These claims are presently before the court for disposition.

## II.    Legal Standards

The statutory authority of federal courts to issue habeas corpus relief for

persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  A habeas

corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to

challenge the "fact or duration" of his confinement.  Preiser v. Rodriguez, 411 U.S.

475, 498-99 (1973).  "[I]t is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62,

67-68 (1991).  Rather, federal habeas review is restricted to claims based "on the

ground that [petitioner] is in custody in violation of the Constitution or laws or

treaties of the United States."  28 U.S.C. § 2254(a); Estelle, 502 U.S. at 68.

---

[1]  In the second PCRA petition, Stoss claimed that trial and PCRA counsel
were ineffective for failing to argue that the trial court abused its discretion when it
limited cross-examination of two Commonwealth witnesses, failing to challenge the
use of phone records at trial, failing to utilize DNA testing documents to support his
claim of innocence, and failing to raise trial and appellate counsels' failure to
challenge the sufficiency of the evidence.  (Doc. 13-2 at 49-50).

## A.    Merits Standard

Once a court has determined that the exhaustion requirement is met[2] and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent."  Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct.  A petitioner may only rebut this

---

[2] As stated, the court previously found that the remaining claims in Stoss's habeas petition were fully exhausted through the direct appeal proceedings and initial PCRA petition.  (Docs. 15, 16).

presumption with clear and convincing evidence of the state court's error.  Miller-El
v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard
in § 2254(e)(1) applies to factual issues, whereas the unreasonable application
standard of § 2254(d)(2) applies to factual decisions); Matteo, 171 F.3d at 888;
Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005).  This presumption of
correctness applies to both explicit and implicit findings of fact.  Campbell
v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).  Consequently, a habeas petitioner
"must clear a high hurdle before a federal court will set aside any of the state
court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual
determination should be adjudged "unreasonable" under paragraph (2) only if the
court finds that a rational jurist could not reach the same finding on the basis of the
evidence in the record.  28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278,
296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000);
cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979).  "This provision essentially requires
the district court to step into the shoes of an appellate tribunal, examining the
record below to ascertain whether sufficient evidence existed to support the
findings of fact material to the conviction."  Breighner v. Chesney, 301 F. Supp. 2d

354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[3]).  Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief.  Porter, 276 F. Supp. 2d at 296; see also Williams v. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination.  Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. at 408-09.

### B.    Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to the effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  This right to effective assistance of counsel also extends to the first appeal.  Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004).  In Strickland, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel.  Strickland, 466 U.S. at 687-88.  A petitioner must demonstrate (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice.  See id.

In evaluating the first prong of the Strickland test, the court must be "highly deferential" toward counsel's conduct.  Id. at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional

---

[3]  "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination."  28 U.S.C. § 2254(f).

assistance.  Id. ("It is all too tempting for a defendant to second-guess counsel's

assistance after conviction or adverse sentence, and it is all too easy for a court,

examining counsel's defense after it has proved unsuccessful, to conclude that a

particular act or omission of counsel was unreasonable.").  "Strickland and its

progeny make clear that counsel's strategic choices will not be second-guessed by

post-hoc determinations that a different trial strategy would have fared better."

Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 446 U.S. at

689).  Notably, courts will not deem counsel ineffective for failing to raise a meritless

argument.  Strickland, 466 U.S. at 691; United States v. Saunders, 165 F.3d 248, 253

(3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a

reasonable probability that, but for counsel's deficient performance, the outcome of

the proceeding would have been different.  See Strickland, 466 U.S. at 694.  "A

reasonable probability is a probability sufficient to undermine confidence in the

outcome."  Id.  Moreover, the petitioner must show that he or she had a reasonable

likelihood of prevailing on the motion at issue, and having prevailed on the motion,

it was also reasonably likely that the result of the trial would have been different.

See Thomas v. Varner, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must

satisfy both prongs of the Strickland test.  Carpenter v. Vaughn, 296 F.3d 138, 149

(3d Cir. 2002).  The inquiry may begin with either the deficient performance or

prejudice prong, and the court is not required to consider the second prong of the

test if the petitioner is unable to satisfy the first one.  Strickland, 466 U.S. at 697.

All of Stoss's ineffective assistance of counsel claims were addressed by the state courts on the merits and, therefore, are subject to AEDPA review.

## III.  Discussion

In the instant petition, Stoss sets forth the following grounds for relief: (1) the trial court erred in failing to suppress his statements to the Pennsylvania State Police and failing to suppress evidence seized without his consent; (2) the trial court erred by failing to give a missing witness instruction; and, (3) trial counsel were ineffective for failing to present an alibi defense, failing to object to the prosecution's closing statement, and failing to present any evidence that another individual confessed to killing someone by the river bank on the same night Stoss was accused of the murder.  (Doc. 1).

### A.  Claim of Trial Court Error for Failure to Suppress Statements

Stoss maintains that the trial court erred in failing to suppress statements he made to investigating police officers in violation of Miranda.[4]  The court finds that the state court's refusal to suppress Stoss's statements did not violate his rights under the Fifth Amendment, and thus was not contrary to, or an unreasonable application of, clearly established federal law.

Stoss raised this issue on direct appeal.  In addressing this claim, the Pennsylvania Superior Court found as follows:

> Appellant's first contention is that the trial court should have suppressed the statement that he gave to police on March 12, 2011, since he was not given his constitutional warnings as required by Miranda v. Arizona, 384 U.S. 436

---

[4]  Miranda v. Arizona, 384 U.S. 436, 444 (1966).

(1966), prior to being questioned. . . [I]n that statement, Appellant admitted that he was in the company of the victim during the timeframe of her disappearance.

. . .

As our Supreme Court observed in Commonwealth v. Gaul, 912 A.2d 252, 255 (Pa. 2006) (quoting Rhode Island v. Innis, 446 U.S. 291 (1980)), "the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." "The prosecution may not use statements stemming from a custodial interrogation of a defendant unless it demonstrates that he was apprised of his right against self-incrimination and his right to counsel." Id. When "evaluating whether Miranda warnings were necessary, a court must consider the totality of the circumstances." Id. If a defendant was not in custody when questioned, Miranda warnings are not required, and any statement obtained during such an interdiction may be introduced into evidence. Commonwealth v. Garvin, 50 A.3d 694, 698 (Pa. Super. 2012) ("Miranda rights are required only prior to a custodial interrogation").

The determination of whether "a person is in custody for Miranda purposes depends on [if] the person is physically denied of [his] freedom of action in any significant way or is placed in a situation in which [he] reasonably believes that [his] freedom of action or movement is restricted by the interrogation." Commonwealth v. Williams, 941 A.2d 14, 30-31 (Pa. Super. 2008) (citation omitted). "[P]olice detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest." Id. (citation omitted). We use these elements to examine whether a custodial detention invoking Miranda occurred: 1) the reason, duration, and location of the detention; 2) whether the person was transferred to another location against his will; 3) if the person was the focus of the investigation into the crime; and 4) whether restraints, threats, or force were used. Id.

In the present case, the suppression court rendered the following factual findings, which are supported by the record, in determining whether Appellant was under a custodial detention when he was questioned on March 12, 2011. The Pittston Police found Appellant at his brother's home and transported him to the local state police barracks. Appellant voluntarily accompanied police, and he would have been free to drive himself to that location. However, Appellant

did not have a car. Appellant was never handcuffed nor did the police tell him that he was under arrest.

Luzerne County Detective Noone and Pennsylvania State Police Officer Brogan were alone with Appellant during the questioning, and they were located in a room with a table, window, and chairs. Appellant was informed that the authorities were looking for Lillian Calabro and that they were told that Appellant was with her the previous evening. Appellant was asked if he knew anything about the missing woman's whereabouts or who was in her company the previous night. At that point, Appellant offered his statement that the previous night, he had consumed drugs and alcohol with her and had accompanied her to purchase drugs. Thereafter, Appellant agreed to give police his clothing and fingernail clippings. Then, Appellant was driven back by the police to a relative's home in Pittston.

In light of these facts, we concur with the suppression court's conclusion that Appellant was not under a custodial detention when he gave his statement. He went with police willingly and was released after he told them that he last saw Ms. Calabro, whose body had not been discovered at that time, enter the car of a drug dealer. No one suggested that Appellant was under arrest, and the police did not employ any restraints, threats, or force. Appellant was merely asked what he knew about the events of the previous night involving Ms. Calabro. There is no indication that the detention was of significant duration. Hence, Appellant was not subjected to a custodial detention on March 12, 2011. See Commonwealth v. Boczkowski, 846 A.2d 75 (Pa. 2004).

Commonwealth v. Stoss, 2013 WL 11256473, at *3-4.

When presented with the facts of this claim, the state courts concluded that Stoss was not entitled to relief. A suppression hearing was held before the trial court and the court found that Stoss was not under a custodial detention based on the following facts. The investigating officers located Stoss at his brother's house and asked if they could question him about Ms. Calabro's disappearance. See id. Stoss agreed to accompany them to the state police barracks. He was never handcuffed, and never told that he was under arrest. See id. Stoss was free to drive

himself to the state police barracks; however, he did not have a car.  See id.  At the state police barracks, two law enforcement officials identified themselves, indicated that they were attempting to locate Ms. Calabro, and asked Stoss if he knew anything about her activities on March 11, 2011.  See id.  Stoss gave a statement and granted the police permission to obtain the clothing and boots that he was wearing on March 11, 2011, and allowed them to scrape his fingernails.  See id.  The police then transported Stoss back to his brother's home.  See id.

The trial court found that based on the totality of the circumstances, the interview of Stoss was not a custodial interrogation and the Superior Court affirmed.  In reaching this determination, the state courts determined that Stoss willingly and voluntarily accompanied the police to the barracks; he left the station without restrictions after he informed police that he last saw Ms. Calabro enter the car of a drug dealer; Ms. Calabro's body had not been found at the time of the non-custodial questioning; the officers never suggested that Stoss was under arrest; the police did not use any restraints, threats, or show of force; and, finally, the detention was not of significant duration.  Therefore, the state courts properly found that Miranda warnings were not required, and that the trial court did not err in not suppressing the statements.

Miranda serves to exclude from trial statements made by a defendant during a custodial interrogation.  See Miranda, 384 U.S. at 444.  Thus, an individual's Miranda rights apply only when that individual is "in custody" and subjected to "interrogation."  See Illinois v. Perkins, 496 U.S. 292, 296 (1990).  In determining "whether an individual is in custody, the ultimate inquiry is 'whether there is a

formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.'" Reinert v. Larkins, 379 F.3d 76, 86 (3d Cir. 2004) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (internal quotation omitted)). When the individual has not been openly arrested when the statements are made, "'something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so.'" Id. (quoting Steigler v. Anderson, 496 F.2d 793, 799 (3d Cir. 1974) (internal quotation omitted)). "Interrogation" for Miranda purposes includes those words and actions "that the police should know are reasonably likely to elicit an incriminating response." See Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

Here, Stoss was not subjected to the type of custodial interrogation that triggers Miranda. Stoss was not under arrest. He voluntarily accompanied police to the barracks and gave a statement about the events of the previous night involving Ms. Calabro. Moreover, there is no evidence to suggest that Stoss was restrained in any way from breaking off the encounter, let alone restrained to a degree associated with a formal arrest. The state courts' decisions were neither contrary to, nor did they involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Further, the decisions were not based on an unreasonable determination of the facts in light of the evidence. Accordingly, the court will deny this claim.

### B. Claim of Trial Court Error for Failing to Suppress Physical Evidence

Stoss next claims that the trial court erred in failing to suppress evidence obtained from him without his voluntary consent. The Pennsylvania Superior Court rejected this claim on direct appeal and found as follows:

> Appellant's second contention on appeal is derivative of his first. He argues that his consent to give the police his clothing and fingernail clippings was unconstitutionally obtained since he gave that consent while subject to a custodial detention during which his consent was forced. For all of the reasons outlined above, we reject his position that his consent was involuntary…. Under the totality of the circumstances, Appellant's consent to the search of his fingernails and the seizure of his clothing was voluntary. See Commonwealth v. Strickler, 757 A.2d 884 (Pa. 2000).

Commonwealth v. Stoss, 2013 WL 11256473, at *4.

Stoss maintains that not suppressing the challenged evidence constituted legal error on the part of the state court. As a general rule, Fourth Amendment exclusionary-rule claims are cognizable on federal habeas corpus review only if there has been no opportunity for full and fair litigation of the claim in the state courts. See Reed v. Farley, 512 U.S. 339 (1994); Withrow v. Williams, 507 U.S. 680 (1993); Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42 (3d Cir. 1984).

Here, it is clear that Stoss was previously afforded a full and fair hearing on this claim, having raised this issue with the Luzerne County Court of Common Pleas, and subsequently appealing this issue to the Superior Court, which affirmed the trial court. Because Stoss has received a full and fair hearing in which to present this Fourth Amendment claim, his instant attempt to relitigate this issue is

meritless.  See Stone v. Powell, 428 U.S. 465, 481 (1976) ("[W]here the State has

provided an opportunity for full and fair litigation of a Fourth Amendment claim,

the Constitution does not require that a state prisoner be granted federal habeas

corpus relief on the ground that evidence obtained in an unconstitutional search or

seizure was introduced at trial."); see also Gilmore v. Marks, 799 F.2d 51, 56 (3d Cir.

1986) ("[A] federal court may not reexamine the state court's determination that no

Fourth Amendment violation occurred.").  This claim is not cognizable in the

instant habeas action.

### C.    Claim of Trial Court Error for Failing to Give a Missing Witness Instruction

Stoss asserts that the trial court erred in failing to give an instruction on a

missing witness.  On direct appeal, the Pennsylvania Superior Court found that

such an instruction was not warranted and held:

> Appellant's final position is that the trial court erred in refusing to
> disseminate a missing witness instruction to the jury regarding the
> Commonwealth's failure to present Susan Henry.  "Our standard of
> review when considering the denial of jury instructions is one of
> deference—an appellate court will reverse a court's decision only when
> it abused its discretion or committed an error of law."  Commonwealth
> v. Baker, 24 A.3d 1006, 1022 (Pa. Super. 2011) (quoting Commonwealth
> v. Galvin, 603 625, 651, 985 A.2d 783, 798-799 (Pa. 2009)).  "It has long
> been the rule in this Commonwealth that a trial court should not
> instruct the jury on legal principles which have no application to the
> facts presented at trial."  Commonwealth v. Kendricks, 30 A.3d 499, 507
> (Pa. Super. 2011) (quoting Commonwealth v. McCloskey, 656 A.2d
> 1369, 1374 (Pa. Super. 1995)).  The missing witness instruction is
> appropriate under the following scenario:
>
>> The criteria required before an inference can be drawn
>> from the failure of a party to produce a witness are well-
>> established.  Where evidence which would properly be
>> part of a case is within the control of the party whose
>> interest it would naturally be to produce it, and, without

satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him. . . . The person not produced must be within the power of the party to produce. . . . In <u>Commonwealth v. Jones</u>, 455 Pa. 488, 495, 317 A.2d 233, 237 (1974) our Supreme Court articulated the 'missing witness' inference rule as follows: "When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, The jury may draw an inference it would have been unfavorable[.]" <u>Commonwealth v. Newmiller</u>, 409 A.2d 834, 838-39 (Pa. 1979).

Ms. Henry was one of the people in Stephanie's Bar with Ms. Calabro on the night of her murder. The trial court noted that both "[d]efense counsel and the Commonwealth had identified her as a potential witness" and that Appellant "had ample opportunity to locate Ms. Henry." Trial Court Opinion, 12/18/12, at 18. Despite substantial efforts to do so, Appellant simply could not find the women. As the trial court aptly observed, the witness was available to both parties, and the failure to produce her was explained by the fact that she left the vicinity without giving any information as to where she went. We therefore affirm the trial court's refusal to give the jury the instruction that it could draw an adverse inference against the Commonwealth based upon Ms. Henry's absence at trial. The instruction was not warranted by the facts.

<u>Commonwealth v. Stoss</u>, 2013 WL 11256473, at *4-5.

The mere fact that a jury "instruction was allegedly incorrect under state law is not a basis for habeas relief." <u>Duncan v. Morton</u>, 256 F.3d 189, 203 (3d Cir. 2001) (quoting <u>Estelle</u>, 502 U.S. at 71-72). More specifically, a state court's failure to give a particular jury instruction will only warrant habeas relief if the error was not harmless, *i.e.*, "had substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993); <u>see also</u> <u>Lewis v. Pinchak</u>, 348 F.3d 355, 359 (3d Cir. 2003) (holding that the harmless error analysis

applies to a court's refusal to give a jury instruction). That a challenged instruction was "undesirable, erroneous, or even universally condemned," is insufficient to warrant habeas relief; a petitioner can only prevail on such a claim by showing that the instruction rendered the trial fundamentally unfair. Duncan, 256 F.3d at 203.

We conclude that the absence of a missing witness instruction did not deprive Stoss of a fair trial. The record demonstrates that the state courts reasonably determined that (1) both defense counsel and the Commonwealth identified Ms. Henry as a potential witness; (2) Ms. Henry was not available to only one of the parties; (3) Stoss had ample opportunity to locate Ms. Henry, but could not find her; and, (4) Ms. Henry departed the area without providing any information as to her whereabouts. Commonwealth v. Stoss, 2013 WL 11256473, at *4-5. The state courts found that a missing witness instruction was not warranted by the facts, and could have caused the jury to draw an adverse inference against the Commonwealth based upon Ms. Henry's absence at trial. We agree and conclude that Stoss has failed to demonstrate that the absence of a missing witness instruction had a "substantial and injurious effect" on the fairness of his trial. Brecht, 507 U.S. at 637. Accordingly, the court will deny this claim.

### D. Ineffective Assistance of Counsel Claims

#### 1. *Failure to Present an Alibi Defense*

Stoss contends that trial counsel provided ineffective assistance by failing to present an alibi defense. On appeal from the denial of PCRA relief, the Pennsylvania Superior Court rejected this claim as follows:

Appellant first claims that both of his trial counsel were ineffective for failing to present an alibi defense at trial. "Generally, an alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him [or her] to be the guilty party. . . . At the core of an alibi defense is, of course, consistency between the date and time of the crime and that of the defendant's alibi." Commonwealth v. Ali, 10 A.3d 282, 316 (Pa. 2010) (internal citation omitted).

Appellant cites to video surveillance of him on security cameras from a business that was approximately an eight-minute walking distance from the riverbank. He asserts that the times on the video establish that he could not have been the person the Commonwealth's eyewitness saw "with the victim on the riverbank at 11:30 p.m." Appellant's Brief at 8. He further contends that, given this evidence, he "would have been entitled to an alibi instruction," and that such evidence could "have raised a reasonable doubt with the jury [ ] of [his] presence at the scene of the crime." Id.

At the PCRA court's evidentiary hearing, both attorneys who represented Appellant at trial testified that Appellant never asked to present an alibi and that their review of the discovery materials yielded no probable evidence of an alibi. See N.T., 4/21/15, at 55-90, 91-95.

Also, the PCRA court observed that, according to trial counsel, the amount of time that passed between when the Commonwealth witness first ordered her pizza at 11:23 p.m. and when the witness received the pizza is not definitively established in the record. Nor was Ms. Calabro's precise time of death ever established on the record, and Appellant's own statements to police, his daughter, and Amanda Smith, place him in the vicinity of the riverbank near midnight and into the early morning hours of the next day. As the PCRA court explained:

> [Jeniffer] relates seeing her father in the early morning
> hours on March 12, 2011 at her apartment. [She] testified
> [Appellant] called her around 2:30 a.m., and said he was
> at the river and he murdered a black man in a bad drug
> deal. When she saw her father, [Jeniffer] testified "he was
> wet from the waist down, jeans soaking wet, shirtless,
> with scratches down his chest." This testimony was
> corroborated by another witness, Amanda Smith. [Ms.]
> Smith also testified that [Appellant] said he was in a fight

with a black man and killed him by hitting him in the
head with a rock.

Defense counsel, as indicated, tried to suppress
[Appellant's] statements made to police on March 12,
2011[.] With their Motion denied, the statements came in
and with no other location for [Appellant] and no
corroboration there is no real alibi. There was no exact
time of death and [Jeniffer] testified as to a phone call
from her father around 2:30 a.m. The early morning hour
would allow ample time for [Appellant] to commit the
crime for which he was found guilty.

PCRA Court Opinion, 9/15/15, at 8 (citation to notes of testimony
omitted).

Because our review of the record supports the PCRA court's
conclusion, Appellant's first issue regarding ineffectiveness lacks
arguable merit and is therefore denied.

Commonwealth v. Stoss, 2016 WL 5930533, at *4-5.

Upon review of the record, the court finds that Stoss failed to demonstrate

prejudice in order to set forth an ineffective assistance of counsel claim, and has not

demonstrated that counsels' failure to present an alibi defense fell below an

objective standard of reasonableness. Indeed, the Superior Court found that Stoss's

claim that his counsel should have presented an alibi defense lacked arguable

merit. At the April 21, 2015 PCRA hearing, both trial counsel testified that they did

not recall speaking to Stoss regarding an alibi, and that an alibi defense was not

plausible. (Doc. 13-1, p. 48, N.T. 55:16-20; p. 57, N.T. 91:19-92:3). To the contrary,

the surveillance footage affirmatively places Stoss in the vicinity of the murder

around the time of the eyewitness account, corroborating other inculpatory

evidence. Counsel further testified that if an alibi defense was appropriate, they

certainly would have pursued the defense and would have filed the proper motion.

(Doc. 13-1, p. 57, N.T. 91:19-92:3). Counsel is not ineffective for failing to raise a meritless claim and Stoss is not entitled to habeas relief on this claim. See Strickland, 466 U.S. 668; Echols v. Ricci, 492 F. App'x 301, 313 (3d Cir. 2012) (nonprecedential) (holding that the district court properly denied the ineffective assistance of counsel claim because "there is no constitutional requirement for an alibi instruction and because the instructions given by the trial court in this case made it clear that the government had to prove beyond a reasonable doubt that [petitioner was at the location of the crime]").

### 2. *Failure to Object to Prosecutor's Statement*

Next, Stoss claims that trial counsel were ineffective for failing to object to the prosecutor's statement in closing arguments that Stoss's blood was on the presumed murder weapon. The Pennsylvania Superior Court affirmed the PCRA court's denial of this claim as follows:

> Appellant next asserts trial counsel was ineffective for failing to object to the prosecutor's statement during closing arguments that Appellant's blood was found on "the paving piece that was allegedly used as the murder weapon." Appellant's Brief at 14. According to Appellant:
>
>> This was clearly prosecutorial misconduct intentionally undertaken to prejudice [Appellant] to the point of the denial of a fair trial. The prosecutor knew that there was not a single item retrieved from the scene of the crime that had [Appellant's] DNA or blood. The blood on the paver was the victim[']s blood, not [Appellant's].
>
> Id. at 15.
>
> Our standard of review for a claim of prosecutorial misconduct is limited to "whether the trial court abused its discretion." Commonwealth v. Harris, 884 A.2d 920, 927 (Pa. Super. 2005), appeal denied, 928 A.2d 1289 (Pa. 2007). In considering such a claim, our

attention is focused on whether the defendant was deprived of a fair trial, not a perfect one.  Id.  This Court has observed:

> Not every unwise remark on a prosecutor's part constitutes reversible error.  Indeed, the test is a relatively stringent one.  Generally speaking, a prosecutor's comments do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward Appellant so that they could not [weigh] the evidence objectively and render a true verdict.  Prosecutorial misconduct, however, will not be found where the comments were based on evidence or proper inferences therefrom or were only oratorical flair.  In order to evaluate whether comments were improper, we must look to the context in which they were made.

Id.

Instantly, the PCRA court found no merit to Appellant's claim because the prosecutor immediately corrected himself.  Additionally, the PCRA court stated that the trial court had instructed the jury, on several occasions, that closings by counsel are not evidence, and cited the point that juries are presumed to follow the trial court's instructions.  The PCRA court explained:

> It is undisputed that the prosecutor misspoke when he stated [Appellant's] blood was on the rock but his next statement was specific ". . . the blood was [Calabro's]."
>
> ***
>
> The [trial] court also stated on two separate occasions that opening and closing arguments are not evidence.  A jury is expected to follow the instructions submitted to it and to decide what the true facts are/were in this case.

PCRA Court Opinion, 9/15/15, at 9.

Again, our review of the record supports the PCRA court's conclusions.  Trial counsel therefore cannot be deemed ineffective for failing to pursue this meritless claim.  Payne.  The PCRA court correctly denied this claim.

Stoss, 2016 WL 5930533, at *5.

The state courts specifically found that, although the prosecutor misspoke, he immediately corrected himself, and the trial court instructed the jury on two separate occasions that closings by counsel are not evidence. The state courts reasonably concluded that Stoss failed to establish the merits of the underlying claim of prosecutorial misconduct; therefore, trial counsel cannot be deemed ineffective for declining to object to the closing statement, as such an objection was not warranted. The court will deny the habeas petition with respect to this ineffective assistance of counsel claim.

### 3. *Failure to Present Another Confession*

Lastly, Stoss argues that trial counsel were ineffective for failing to present evidence that another individual claimed to have killed someone on the night of the murder. The Pennsylvania Superior Court affirmed the PCRA court's denial of this claim and found as follows:

> In his third issue, Appellant asserts that trial counsel was ineffective for not presenting "evidence that another individual, who lived at the same place as the victim, confessed to a killing that same night." Appellant's Brief at 18. In rejecting this claim, the PCRA court accepted trial counsel's testimony that she discounted the possibility that this other individual was the murderer because that individual, a juvenile, alleged that he had stabbed a victim; Ms. Calabro was not stabbed, but had been killed by a blunt impact to the skull. Also, trial counsel noted that a Children & Youth Services caseworker believed the juvenile's story to be a "manipulation." PCRA Court Opinion, at 9.

> Given these discrepancies and credibility issues, the PCRA court correctly found that Appellant's claim lacks arguable merit. Moreover, we note that this claim of ineffectiveness involves counsel's trial strategy. The Supreme Court of Pennsylvania has repeatedly held that "a petitioner is not entitled to relief because counsel's trial strategy was unsuccessful; when the course chosen was reasonable, counsel cannot be faulted for failing to pursue a different path. Speculation by hindsight that a different strategy might possibly have been successful

is not the test which establishes ineffectiveness of counsel."
Commonwealth v. Fisher, 813 A.2d 761, 767 (Pa. 2002) (internal citation
omitted). To sustain a claim of ineffectiveness predicated on strategy,
a litigant must prove that the strategy employed by trial counsel "was
so unreasonable that no competent lawyer would have chosen that
course of conduct." Commonwealth v. Chmiel, 889 A.2d 501, 541 (Pa.
2005).

At the PCRA court's evidentiary hearing, trial counsel testified about
why she did not use the juvenile's "confession." She described her
trial strategy as instead placing blame for the murder on two different
men, one of whom had a Protection from Abuse order filed against him
by Ms. Calabro and could not account for his whereabouts on the night
in question. See N.T., 4/21/15, at 99, 108-09. The PCRA court credited
trial counsel's testimony and found her strategy reasonable. We
cannot disturb this determination. See Commonwealth v. Harmon,
738 A.2d 1023, 1025 (Pa. Super. 1999) (when PCRA court's
determination of credibility is supported by the record, it cannot be
disturbed on appeal). Thus, the PCRA court properly denied
Appellant's third issue.

Stoss, 2016 WL 5930533, at *5-6.

In evaluating whether counsel's performance was deficient, the court must

defer to counsel's tactical decisions, avoid "the distorting effects of hindsight" and

give counsel the benefit of a strong presumption of reasonableness. Strickland, 466

U.S. at 689. The court finds that the record relied upon by the state courts supports

a finding that trial counsel had a reasonable basis for not using the purported

confession of another individual. The PCRA court determined that the claim lacked

arguable merit and the Superior Court found that trial counsel articulated a sound

and reasonable basis for not using the individual's confession. Specifically, trial

counsel explained an alternate trial strategy and noted that the other individual

claimed that he stabbed a victim, while Ms. Calabro was killed by a blunt object.

Stoss has not provided sufficient evidence to show that the representation by his

trial counsel fell below an objective standard of reasonableness. The court will deny the habeas petition on this ground.

## IV. <u>Certificate of Appealability</u>

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El</u>, 537 U.S. 322. Because reasonable jurists could not disagree with the resolution of this petition, there is no basis for the issuance of a COA. Thus, the court will decline to issue a certificate of appealability, as Stoss has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); <u>see also</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

## V. <u>Conclusion</u>

The court will deny Stoss's application (Doc. 1) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. An appropriate order shall issue.

<u>/S/ CHRISTOPHER C. CONNER</u>
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     May 19, 2021